**Al De ARTEAGA, Plaintiff, Appellant,**

v.

**PALL ULTRAFINE FILTRATION CORPORATION, Defendant, Appellee.**

No. 88–1046.

United States Court of Appeals, First Circuit.

Heard Oct. 6, 1988.

Decided Dec. 15, 1988.

Enrique Bray with whom Dominguez & Totti, Hato Rey, P.R., was on brief, for plaintiff, appellant.

Jorge L. Capo–Matos with whom Pedro A. Delgado–Hernandez and O'Neill & Borges, Hato Rey, P.R., were on brief, for defendant, appellee.

Before CAMPBELL, Chief Judge, BROWN,[*] Senior Circuit Judge, and COFFIN, Circuit Judge.

LEVIN H. CAMPBELL, Chief Judge.

This appeal is from the district court's granting of summary judgment to the defendant, Pall Ultrafine Filtration Corporation ("Pall"), in an age discrimination action brought by Al De Arteaga, who was discharged at the age of 47 after serving for a year as Pall's regional sales manager for Puerto Rico, Georgia and Florida. The district court's opinion is published at 673 F.Supp. 650 (D.P.R.1987). Essentially for the reasons stated therein, we affirm. We comment further, however, upon certain of appellant's arguments.

■ The question, when reviewing the correctness of summary judgment, is

whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52, 106 S.Ct. 2505, 2511–12, 91 L.Ed.2d 202 (1986). This turns on whether

there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.

*Id.* at 249, 106 S.Ct. at 2510 (citations omitted). Evidence that is "merely colorable" or "not significantly probative" is not enough. *Id.* at 249–50, 106 S.Ct. at 2510–11. The question is not whether there is literally *no* evidence favoring the non-movant, but whether there is any upon which a jury could properly proceed to find a verdict in that party's favor. *Id.* at 251, 106 S.Ct. at 2511 (quoting *Improvement Co. v. Munson,* 14 Wall. 442, 448, 20 L.Ed. 867 (1872)).

De Arteaga's age discrimination claim was brought under Puerto Rico law, the lower court's jurisdiction resting upon diversity of citizenship. The ultimate question is whether there is enough competent evidence for a jury to find that Pall was guilty of age discrimination under Puerto Rico law when it discharged De Arteaga.

■ Under sec. 1 of Law 100, P.R.Laws Ann. tit. 29, § 146 (1985), an employer who discharges or discriminates against an employee on the basis of age incurs civil liability. Discharge of an employee "without good cause" is a presumptive violation of sec. 1, although the presumption is of a "controvertible character." Sec. 3 of Law 100, P.R.Laws Ann. tit. 29, § 148 (1985). Once the presumption is established, "the defendant employer is required to prove that the discharge was *not* discriminatory." *Ibáñez Benítez v. Molinos de Puerto Rico, Inc.,* No. O–82–378, slip op. at 12 (Official English Translation) (P.R. Mar. 16, 1983). In this respect, the burden shifting under Law 100 of Puerto Rico operates differently from that under the federal age discrimination law. *Id.*

Under this analysis, as the district court recognized, there are two questions: 1) Would the evidence taken most favorably for plaintiff permit a reasonable jury to find that he was let go "without good cause?" 2) Assuming a genuine issue of fact as to "good cause," would the evidence as a matter of law permit a finding that De Arteaga was discharged because of his age (taking into account Pall's burden to prove non-discrimination)? The district court returned a negative answer to both questions, as do we.

As to the first issue, Pall's evidence was to the effect that De Arteaga was let go because of his lack of technical expertise, because he made various errors, and because he did not have the confidence of the sales staff at Pall's sole Puerto Rico distributor.[1] Pall's marketing vice-president's

---

* Of the Fifth Circuit, sitting by designation.

1. Pall's regional sales managers acted as go-betweens between Pall and independent distributors in the various states, with the latter and their own sales personnel responsible for selling Pall's industrial filtration equipment to ultimate users. Pall's regional sales managers' responsi-

bilities thus primarily entailed providing information, back-up, and technical training to customers and distributors' salesmen, rather than foot-in-the-door salesmanship. When hired in 1984, De Arteaga, unlike Pall's other regional sales managers, lacked technical training or industry experience in industrial filtration equip-

sworn statement to this effect was backed by a sworn statement from Gold, the owner-manager of Pall's Puerto Rico distributor. These sworn statements indicate that Pall discharged De Arteaga because Pall believed De Arteaga was performing ineffectively. Under Puerto Rico law, ineffective performance is sufficient basis for a good cause discharge. *Id.* at 9 n. 2. *Narváez v. Chase Manhattan Bank N.A.,* No. CE–87–100, slip op. (P.R. Mar. 30, 1988); *Báez García v. Cooper Laboratories,* No. R–85–279, slip op. (P.R. Dec. 18, 1987).

De Arteaga, in his own sworn statement, countered that he had received no complaints as to the quality or ineffectiveness of his work from any of the salesmen of the distributors with whom he worked, nor from Gold himself. De Arteaga further complained that prior to discharge he had received no warning or reprimand from his superiors at Pall, other than suggestions to make a further effort to memorize all of Pall's product numbers, nor was he told he had to reach certain sales quotas. De Arteaga set forth extensive figures, allegedly based on Pall's own sales figures, which he contends show that in the three regions for which he was responsible, the volume of Pall's sales had been satisfactorily maintained.

■ It is a close question whether on this record De Arteaga has raised as a genuine issue of fact whether his discharge was "without good cause." The fact that other salesmen, including Gold himself, did not complain to De Arteaga personally does little to counter Gold's and De Arteaga's supervisor's sworn statements that Gold and his sales personnel had expressed dissatisfaction to Pall. And the fact that sales figures during the relatively short period of his tenure were arguably sufficient is somewhat beside the point, as the stated basis for Pall's dissatisfaction was De Arteaga's lack of competence, not that sales had plummeted. A stronger point for De Arteaga is his assertion that, except for

urging him to memorize product numbers, his supervisors did not reprimand or warn him of impending discharge. If a jury believed De Arteaga's version, it might infer from the lack of warning or reprimand that he was performing better than Pall now says. On the other hand, De Arteaga nowhere presents evidence to contradict Pall's primary criticisms that he lacked technical skills and that Gold, the head of Pall's sole Puerto Rico distributor, had complained to Pall on the grounds stated.

A recent decision of the Puerto Rico Supreme Court lends support to Pall's argument that there is not a triable issue concerning whether De Arteaga's discharge was "without good cause." In *Narváez v. Chase Manhattan Bank N.A.,* slip op. (Official English Translation), the court overturned lower court decisions that a bank did not have good cause to fire an employee for poor quality work as it was the employer's mistake to have promoted him to a supervisory position beyond his ability. Holding that discharge for incompetence was neither "whimsical [n]or abusive," the court reaffirmed its holding in *Báez García v. Cooper Laboratories* that an employer has good cause to discharge an employee who is not performing his duties properly. *Narváez,* slip op. at 5–6 (Official English Translation). It is true that De Arteaga's discharge occurred more rapidly and after less deliberate consideration than those in *Narváez* and *Báez García.* Still, Pall's chief reasons for discharging him—his lack of technical proficiency and Gold's complaints—are substantially unrefuted in De Arteaga's submissions. Given the obvious threat to Pall's business if its regional sales managers were a source of complaint, we cannot say that Pall's dispatch in letting De Arteaga go created a triable issue of fact over lack of good cause.

■ While the above ends the matter, we also agree with the district court that, even assuming there were a triable issue as to whether the discharge was for good cause, a reasonable jury could not find on

___

ment; Pall accordingly provided him extensive training. Pall's chief complaint in letting De Arteaga go in 1985 was his failure, notwith-

standing the training, to have acquired a satisfactory level of technical ability to discharge his job properly.

this record that Pall discharged De Arteaga because of his age. We so hold notwithstanding our appreciation that (assuming a discharge without good cause), Pall under Puerto Rico law would have the burden of *dis* proving a discriminatory discharge.

De Arteaga testified at his deposition, when asked what proof he had that he was dismissed because of his age,

> I don't have any direct proof. I don't know why I was dismissed. I don't have any proof that I was dismissed because of my age. I don't know why I was dismissed.

This is not a total concession, of course. *Direct* proof of discrimination is not essential if there is sufficient probative circumstantial evidence of age discrimination, so we turn to that question. Taking matters most strongly for De Arteaga, the chief circumstantial evidence would be 1) that he was discharged "without good cause"; 2) that 26 of Pall's 29 employees (including the younger man eventually hired to replace 47–year–old De Arteaga) were younger than he; and 3) that others, younger than he, who allegedly performed as poorly, were not discharged. We agree with Pall, however, that the last two items are of little weight. As to 3), there is no evidence that the other undischarged employees were situated so similarly to De Arteaga as to implicate disparate treatment. As for 2), De Arteaga did not indicate the ages of those who had applied for work with Pall; quite possibly the relative youth of its personnel was a function of the remuneration, the nature of the duties, etc., which may have attracted a more youthful group of applicants. We do not believe it can reasonably be inferred from its employees' ages alone that Pall had an illegal policy of preferring younger people. De Arteaga, after all, was hired just a year earlier, at age 46. De Arteaga notes that he was hired by a different person at Pall than the one who fired him, implying that discrimination at Pall may be a recent phenomenon. Unless, however, there has been a recent rash of age discriminatory hirings and firings at Pall (and there is no evidence to so suggest), there must be some explanation other than age discrimination for the relative youth of Pall's existing workforce. Pall points out that of the three people (including De Arteaga) fired within a year of his dismissal, the two others were ages 30 and 32. Any inference of age discrimination raised by Pall's choice of a younger replacement is further weakened by the fact that there was an eight-month lag between De Arteaga's discharge and his replacement's employment. If Pall's interest was in acquiring a younger man, one would think that Pall would have waited until a replacement was available instead of firing De Arteaga when it did. At 47, De Arteaga was middle-aged, not "old," by normal standards. The fact is, there is not a scintilla of actual evidence that anyone at Pall cared, or had any reason to care, whether the person occupying De Arteaga's job at Pall was in his 40s rather than his 30s.

De Arteaga's strongest argument comes from the possible effect of the Puerto Rico statutory presumption of discrimination that flows automatically from his discharge "without good cause." The presumption shifts the burden of persuasion, as well as of production, to Pall. *Ibáñez Benítez*, slip op. at 12 (Official English Translation). We nonetheless conclude that the presumption is not enough to carry the day on these facts. Pall did in fact state and explain extensively why it let De Arteaga go. De Arteaga's lack of technical background is conceded, and Gold's complaints are essentially unrefuted. Even assuming that, for some reason (such as failure to warn De Arteaga or give him a further chance), the discharge were deemed lacking in "good cause," there is nothing to suggest that age was a material factor.[2]

We do not believe, moreover, that Puerto Rico law requires us to treat the statutory presumption flowing from a discharge

2. As we have said in a comparable case decided under the federal age discrimination law, the issue is not whether the employer made a "wise decision" in discharging the plaintiff but whether he fired the plaintiff because of his age. *Menard v. First Security Services Corp.*, 848 F.2d 281, 287 (1st Cir.1988).

without good cause as automatically creating, in every case, a jury issue of age discrimination. As there is no right to a civil jury trial in the courts of Puerto Rico, we do not attribute to the Supreme Court of Puerto Rico any particular view concerning the effect of the presumption upon the right to a jury trial. We believe the presumption is entitled to the same evidentiary weight, but no more, than whatever inference reasonably flows from the facts giving rise to the presumption. Here such inference together with all other facts and circumstances favorable to plaintiff simply fails to establish a case of age discrimination. Whether or not plaintiff was fired too precipitously, there is no probative evidence that he was fired for any reason other than the one advanced by his employer, and certainly not because of his age.

AFFIRMED.