Sosman, J.
Plaintiff filed this action alleging that her former employers discriminated against her in the work place. Plaintiffs original complaint contained multiple counts against both named corporate defendants. Defendants filed a motion to dismiss all counts of the original complaint except for plaintiffs sex discrimination claim under G.L.c. 151B. At the hearing on defendants’ motion to dismiss, plaintiff agreed to drop all but six counts of the original complaint. Plaintiff then filed a motion to amend the original complaint to reduce it to the six counts she intends to pursue. Defendants have opposed the motion to amend on the ground that the proposed amendment is futile and that only plaintiffs G.L.c. 151B claim states a claim for which relief can be granted.
For the following reasons, defendants’ motion to dismiss is allowed.
Facts
Plaintiff Jane Titcomb was an Assistant Vice President in the private group of Boston Safe & Deposit Trust Company (the entity through which the Boston Company operates banking services) from June 1985 until October 1991. In October 1991, allegedly due to a series of events at her work place culminating in June 1991, plaintiff resigned her position and filed this suit against her former employers.
Plaintiff claims that, beginning roughly in the fall of 1989 -with the promotion of a male subordinate, defendants engaged in employment practices that discriminated against her because of her gender. Plaintiff alleges that defendants’ employees “systematically and deliberately discriminated against and denied equal opportunity” to women of plaintiffs rank “in favor of a young, all-male hierarchy, regardless of individual qualifications” to create a “Boys’ Club” atmosphere at work. Plaintiff claims that she was singled out for undue scrutiny and criticism by superiors who demeaned and humiliated her in front of coworkers. It was this constant “riding” by superiors that, according to plaintiff, forced her to resign her position.
Procedural Background
After filing her discrimination claim with the Massachusetts Commission against Discrimination (MCAD), plaintiff filed the present action in June 1992 alleging wrongful termination, sex discrimination, sexual harassment, negligence, intentional infliction of emotional distress, and state civil rights and equal rights violations. Defendants filed a motion to dismiss all counts of the complaint with the exception of the two counts alleging sex discrimination in violation of G.L.c. 151B.
At the hearing on the motion to dismiss, plaintiff agreed to the dismissal of all but the following three claims: (1) violations of G.L.c. 151B (Counts III and XI); (2) violations of G.L.c. 93, §102, the Massachusetts Equal Rights Act (hereinafter “Equal Rights Act”) (Counts VI and XTV);[1] and (3) intentional infliction of emotional distress (Counts VIII and XVI). Plaintiff then ñled a motion to amend the original complaint, proposing an amended complaint containing only six counts stating G.L.c. 151B claims, Equal Rights Act claims and intentional infliction of emotional distress claims against each defendant. Defendants responded with an opposition to plaintiffs motion to amend on the ground that amending the complaint would be futile because the amended Equal Rights Act and emotional distress claims would still not survive a motion to dismiss.
Discussion
1. The Massachusetts Equal Rights Act, G.L.c. 93, §102.
In Counts VI and XIV of the original complaint, headed “Civil Rights and Equal Rights Violations,” plaintiff alleged that defendants’ discriminatory treatment of her (as described in seven separate “acts and omissions”) constituted civil rights violations under G.L.c. 12, §11H and 111 in that defendants violated her rights as protected by the United States Constitution, the Massachusetts Constitution, G.L.c. 151B, and the Equal Rights Act, G.L.c. 93, §102. In the Amended Complaint, plaintiff alleges essentially the same facts as in her original Counts VI and XTV, but seeks recovery pursuant directly and only to G.L.c. 93, §102 for “Equal Rights Violations.” Defendants argue that G.L.c. 93, §102 is, by its terms, not applicable to disputes arising during the course of employment and that G.L.c. 151B provides plaintiff her exclusive remedy for claims of discrimination on the job.
The Equal Rights Act provides:
All persons within the commonwealth, regardless of sex, race, color, creed or national origin, shall have, except as in otherwise provided or permitted by law, the same rights enjoyed by white male citizens, to make and enforce contracts, to inherit, purchase, to lease, sell, hold and convey real and *454 personal property, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.
G.L.c. 93, §102(a). There is no explicit language in the Equal Rights Act providing a remedy for discriminatory treatment during an ongoing employment relationship. The first sentence of the Act simply provides that all persons shall have the same rights “to make and enforce contracts.” A literal interpretation of that language, as urged by defendants, suggests that it contemplates only those disputes which occur at the formation of the employment contract, or those which occur when one seeks to enforce, in court or otherwise, the terms of an employment contract.
Defendants’ literal interpretation of the wording in the Equal Rights Act is supported by Patterson v. McLean Credit Union, 491 U.S. 164, 176-78 (1989), in which the Supreme Court, construing 42 U.S.C. §1981 (the federal analogue to G.L.c. 93, §102), held that “rights to make and enforce contracts” included only two employment-related rights: (1) the right to enter into an employment contract, and (2) the right to enforce terms of such employment contract upon termination. Because racial discrimination alleged in Patterson was on-the-job racial harassment, the Court determined that §1981 provided no remedy. “[T]he right to make contracts does not extend, as a matter of either logic or semantics, to conduct by the employer after the contract relation has been established, including breach of the terms of the contract or imposition of discriminatory working conditions.” 491 U.S. at 177. And, “(t]he right to enforce contracts does not, however, extend beyond conduct by an employer which impairs an employee’s ability to enforce through legal process his or her established contract rights.” 491 U.S. at 177-78.
Concern over what the Supreme Court might decide in the Patterson case in fact inspired the drafting of the Equal Rights Act. Massachusetts legislators and civil rights lawyers feared that Patterson would overrule the holding of Runyon v. McCrary, 427 U.S. 160 (1976), which had established that §1981 applied to discriminatoiy actions in the private sector. Stephen P. Johnson, The 1989 Massachusetts “Equal Rights Law”: A Short History, 34 B.B.J. 17, 18-19 (March-April 1990). The goal in Massachusetts was to provide a statutory prohibition on discrimination in the private sector in order to preserve the relief that Runyon and its progeny had provided under 42 U.S.C. §1981. Id.
Patterson did not, however, erode the application of §1981 in the way that proponents of the then-proposed Massachusetts Equal Rights Act had feared. Patterson did not overturn the Runyon holding that §1981 applied to private actions.[2] 491 U.S. at 171-75. Instead, as discussed supra, Patterson addressed the limits of the term “rights to make and enforce contracts” in the context of claims alleging on-the-job discrimination and did not undermine Runyon in reaching that decision. In the wake of Patterson, decided in June 1989, the Massachusetts legislature did nothing to change the pending Equal Rights Act’s reference to “rights to make and enforce contracts” to distinguish the Patterson interpretation of the identical language in §1981. See Howard v. Town of Burlington, 399 Mass. 585, 589 (1987) (“[i]n construing Massachusetts statutes, we are ordinarily guided by the construction given the parallel Federal statute by the Federal Courts”). Although the statute was not enacted until one month after the Patterson decision was issued, the legislature failed to provide explicit language to ensure that the Equal Rights Act would apply to allegations of post-hiring discrimination. Inasmuch as the pending Patterson case had been a major motivating factor behind the Equal Rights Act, the legislature’s failure to adopt language explicitly expanding the term “make and enforce contracts" is a strong indication that the legislature did not intend an interpretation other than that rendered by Patterson itself on that issue.[3]
Even if this court were to adopt a more expansive reading of the phrase “make and enforce contracts” contrary to the one provided by Patterson, defendants’ alternative argument with respect to the exclusivity of G.L.c. 15 IB would persuade the court to dismiss plaintiffs Equal Rights Act claims. General Laws c. 15 IB, §4(1) expressly prohibits sex-based discrimination in the employment setting. The statute imposes administrative exhaustion requirements, under which a complainant must make a timely complaint to the MCAD, and the MCAD must conduct an investigation of alleged discriminatory activity, attempt to eliminate the activity by conciliation, and, when such efforts fail, conduct a full hearing on those complaints for which there is probable cause. G.L.c. 151B. §5. Persons aggrieved by the MCAD’s decision after hearing may obtain judicial review in the Superior Court. G.L.c. 15IB, §6. Alternatively, a complainant who has filed a timely claim with the MCAD may, after either waiting 90 days or with the commissioner’s written assent, file an action in Superior Court for damages and/or in-junctive relief. G.L.c. 15IB, §9. The statute further declares that “as to acts declared unlawful by section four [prohibiting discrimination], the procedure provided in this chapter shall, while pending, be exclusive; and the final determination therein shall exclude any other action, civil or criminal, based on the same grievance of the individual concerned.” G.L.c. 151B, §9.
The Massachusetts Equal Rights Act contains broad language prohibiting a vast array of unlawful activities and does not address claims of employment discrimination with the specificity (either substantive or procedural) of G.L.c. 151B. It is a basic principle of statutory interpretation that “general statutory lan *455 guage must yield to that which is more specific.” Risk Management Found. of Harvard Medical Insts., Inc. v. Comm'r of Insurance, 407 Mass. 498, 505 (1991).
While the Supreme Judicial Court has yet to rule on whether G.L.c. 15 IB provides an exclusive remedy for employment related discrimination (see O’Connell v. Chasdi, 400 Mass. 686, 693 n.9 (1987)), both the Appeals Court and the federal district court have held that G.L.c. 151B is a plaintiffs exclusive remedy when a plaintiff attempts to bring claims under both G.L.c. 15 IB and the Massachusetts Civil Rights Act (G.L.c. 12, §11H and 111). See Sereni v. Star Sportswear Mfg. Corp., 24 Mass.App.Ct. 428, 431-32 rev. denied, 400 Mass. 1107 (1987); Mouradian v. General Elec. Co., 23 Mass.App.Ct. 538, rev. den. 400 Mass. 1107 (1987); Bergeson v. Franchi, 783 F.Supp. 713, 720-21 (D. Mass. 1992); Conway v. Boston Edison Co., 745 F.Supp. 773 (D. Mass. 1990); Bester v. Roadway Express, Inc., 741 F.Supp. 321, 322-23 (D. Mass. 1990).
The reasoning of these cases applies with equal force and logic when evaluating whether G.L.c. 151B is exclusive of any remedy potentially afforded by G.L.c. 93, §102. The Massachusetts legislature crafted G.L.c. 151B as a comprehensive statute setting forth extensive procedures for remedying alleged acts of discrimination. “To permit such duplication of remedies would allow claimants to bypass the procedural prerequisites defined by the legislature in Mass.Gen.L. ch. 151B, crippling the effectiveness of this specific statutory remedy for discrimination in employment.” Bergeson, supra, 783 F.Supp. at 721. Where the legislature has established the MCAD and its intricate procedures for processing c. 15IB complaints (including its drastically shorter statute of limitations for filing discrimination claims), any interpretation of the Equal Rights Act that allows plaintiffs to circumvent or completely ignore those established procedures would only serve to nullify the MCAD’s role in matters of employment discrimination.
When the Equal Rights Act was passed, the legislature was cognizant of existing precedent holding that G.L.c. 151B constituted an exclusive remedy for employment discrimination. See Selectmen of Topsfield v. State Racing Commission, 324 Mass. 309, 313 (1949) (legislature “must be assumed to know the preexisting law and the decisions of this court”). In light of that existing precedent barring duplicative claims under the state civil rights act, had the legislature intended the Equal Rights Act to supplement remedies existing under G.L.c. 151B, surely it would have said so.
To date, few courts have directly addressed the relationship between G.L.c. 15IB and the Equal Rights Act. In Napolitan v. New England Telephone Co., C.A. No. 91-12973-MA, slip op. at 2-3 (D. Mass. January 15, 1993), the federal court held that G.L.c. 15 IB was an exclusive remedy and dismissed plaintiffs claim for age discrimination under the Equal Rights Act: “Since this is essentially a claim of discrimination in employment, plaintiff should not be allowed to avoid the comprehensive state statute established in c. 151B.” Id. at 3. At least two opinions from this court have also held that G.L.c. 15 IB remedies are exclusive and bar claims under the Equal Rights Act. Agin v. Federal White Cement, Inc., No. 91-1426, slip op. at 6-8 (Hampden Co., September 1992) (Sweeney, J.); Pappas v. Chestnut Knoll, No. 91-0044, slip op. at 4 (Hampden Co., June 18, 1992) (Ready, J.). The one Superior Court decision allowing an employment discrimination plaintiff to proceed under the Equal Rights Act, Cohen v. Safety Insurance Co., No. 91-4991-C (Suffolk Co. February 1993) (Cratsley, J.), relied almost exclusively on “legislative history” of the Equal Rights Act as reported by attorney Johnson. For the reasons discussed above, this court does not find that “legislative history” persuasive when compared with principles of statutory interpretation and the persuasive prior precedent on the issue of exclusivity of G.L.c. 151B.
There is no indication in the Equal Rights Act that the legislature intended to eviscerate the elaborate and uniform scheme for dealing with employment discrimination claims established by G.L.c. 151B. Accordingly, in keeping with both Appeals Court and federal district court precedent that G.L.c. 15IB provides an exclusive remedy for employment-related discrimination claims, plaintiffs claims under G.L.c. 93, §102 (Counts VI and XIV) are dismissed.
2. Intentional Infliction of Emotional Distress.
Plaintiffs complaint alleges that the defendants, through their agents or employees, intentionally inflicted emotional distress upon her at work. Defendants seek dismissal of this claim by means of the exclusivity provisions of the Worker’s Compensation Act. Specifically, defendants contend that G.L.c. 152, §1(7A) defines the emotional distress plaintiff claims to have suffered as a “personal injury” compensable exclusively by the workers’ compensation scheme.
For purposes of worker’s compensation, a compen-sable “personal injury” includes “mental or emotional disabilities” if “an event or series of events occurring within the employment” is “a significant contributing cause of such disability.” G.L.c. 152, §1(7A). The statute later goes on to exclude from the definition of “personal injury” those emotional disabilities “arising out of a bona fide personnel action including a transfer, promotion, demotion or termination.” G.L.c. 152, §29. However, if the personnel action causing the distress is not bona fide but is instead “the intentional infliction of emotional harm,” the resulting emotional or mental disability is a compensable “personal injury” under worker’s compensation law. Id. As such, the intentional infliction of emotional distress complained of here is an employment-related personal injury covered by the workers’ compensation scheme. It may not form the basis of an independent tort suit against the *456 employer or against coemployees who were acting within the scope of their employment. Foley v. Polaroid Corp., 381 Mass. 545, 548 (1980); Simmons v. Merchants Mutual Insurance Co., 394 Mass. 1007 (1985); Anzalone v. Massachusetts Bay Transportation Authority, 403 Mass. 119, 124-25 (1988); Mullen v. Ludlow Hospital Society, 32 Mass.App.Ct. 968, 970 (1992).
Accordingly, Counts VII and XVI of plaintiffs complaint alleging intentional infliction of emotional distress are DISMISSED.
ORDER
For the foregoing reasons, it is hereby ORDERED that:
1. Plaintiffs motion to amend is DENIED;
2. Defendants’ motion to dismiss is GRANTED; and
3. All counts of plaintiffs Complaint are hereby DISMISSED except for Counts III and IX.

Counts VI and XIV also contained references to the state civil rights acts, G.L, c. 12, §11H and 1II. Plaintiff agreed that the civil rights claims in Counts VI and XIV should be dismissed.

The Patterson decision did not make the proposed state statute useless or unnecessary. As drafted, the Equal Rights Act included sex, color, creed and national origin as protected categories, whereas § 1981 had addressed only racial discrimination.

Because the “Equal Rights” bill received quick approval by both houses of the Massachusetts legislature, there is no “official” legislative history (i.e., no floor debate regarding the language and purpose of the statute) to guide this court’s interpretation of the statute’s language. Stephen Johnson, former legislative counsel for the Boston Bar Association, served on the BBA’s seven-member committee assembled to draft and promote legislation in anticipation of the Patterson decision. Johnson’s Boston Bar Journal article, supra, summarizes the events surrounding the drafting and proposal of the Equal Rights Act, up to its speedy enactment on July 19, 1989. As Johnson’s article explains, many civil rights lawyers and legal scholars involved in drafting the Equal Rights Act and getting it through the legislature expressed their hope and expectation that the Act would be interpreted to provide new and expansive remedies. (In many other respects, the Equal Rights Act does contain express provisions that go beyond then existing federal civil rights and equal rights law.) However, that commentary from outside proponents of the bill is not “legislative history” and is of extremely limited value in determining the legislature’s intent, particularly in the face of the legislature’s failure to adopt more expansive terminology following the Patterson definition of “make and enforce contracts.” As such, this court is not persuaded that the “legislative history” of the Equal Rights Act compels an interpretation contraiy to the federal interpretation of identical language in 42 U.S.C. §1981.