NORMAN LONGVAL *vs.* COMMISSIONER OF CORRECTION
& others.[1]

Norfolk. January 4, 1989. — March 13, 1989.

Present: WILKINS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Imprisonment,* Enforcement of discipline, Transfer of prisoner. *Due Process of Law,* Prison disciplinary proceedings. *Administrative Law,* Regulations. *Constitutional Law,* State action. *Civil Rights,* Availability of remedy, Immunity of public official. *Practice, Civil,* Summary judgment.

In an action by a prisoner seeking a declaration that certain officials of the Department of Correction violated his rights to due process under the State and Federal Constitutions; the State Civil Rights Act; the provision in G. L. c. 127, § 39, requiring the approval of the Commissioner of Correction of the transfer of an inmate to a segregated unit; and certain regulations of the department when they transferred him, on two occasions, from the general population at the Massachusetts Correctional Institution at Walpole to the Massachusetts Correctional Institution at Concord (Concord) where he was placed in the administrative segregation unit (A.S.U.), the judge erred in granting partial summary judgment in the plaintiff's favor where affidavits in the record raised a genuine issue of material fact whether the plaintiff's placement in the A.S.U. in Concord was the substantial equivalent of his being placed in a departmental segregation unit requiring certain determinations and hearings in accordance with G. L. c. 127, § 39, that he did not receive. [328-330]

In an action by a prisoner seeking a declaration that his legal rights were violated when certain officials of the Department of Correction transferred him, on two occasions, from the general population at the Massachusetts Correctional Institution at Walpole to the Massachusetts Correctional Institution at Concord (Concord) where he was placed in the administrative segregation unit (A.S.U.), there was no basis on the record for concluding, for summary judgment purposes, either that the guidelines for transfer to the Concord A.S.U. were not lawfully adopted or applied to the plaintiff, or that the department's regulations concerning the transfer of an individual from one correctional facility to another were violated. [330-331]

---

[1] The Superintendents and a deputy superintendent at the facilities during the time relevant to the transfer.

In an action by a prisoner seeking a declaration that certain officials of the Department of Correction violated his rights to due process under the State and Federal Constitutions; the State Civil Rights Act; the provision in G. L. c. 127, § 39, requiring the approval of the Commissioner of Correction of the transfer of an inmate to a segregated unit; and certain regulations of the department when they transferred him, on two occasions, from the general population at the Massachusetts Correctional Institution at Walpole to the Massachusetts Correctional Institution at Concórd where he was placed in the administrative segregation unit, the judge correctly denied the defendants' motion for summary judgment on their theory of qualified governmental immunity, claiming that their actions were taken within areas assigned to their discretion and were not contrary to constitutional principles clearly established at the time of the transfers, where it was unclear from the record what rights of the plaintiff, if any, had been violated. [332]

On appeal from denial of summary judgment in favor of certain officials of the Department of Correction in an action against them by a prisoner who had been transferred, on two occasions, from the general population at the Massachusetts Correctional Institution at Walpole to the Massachusetts Correctional Institution at Concord, seeking relief under the State Civil Rights Act, G. L. c. 12, §§ 11H and 11I, among other remedies, this court stated that in the circumstances, it was premature to decide the defendants' claim that, as a matter of law, the plaintiff's rights were not interfered with "by threats, intimidation or coercion," where it was unclear from the record what wrongs, if any, the defendants had committed. [332-334]

CIVIL ACTION commenced in the Superior Court Department on August 1, 1986.

The case was heard by *Suzanne DelVecchio, J.*, on motions for summary judgment.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Judy G. Zeprun,* Assistant Attorney General, for the Commissioner of Correction.

*Jonathan Shapiro* for the plaintiff.

WILKINS, J. Once in 1983 and again in 1984, the plaintiff Longval, who was serving sentences for armed robbery, was transferred from the Massachusetts Correctional Institution at Walpole (Walpole), now known as Cedar Junction, to the Massachusetts Correctional Institution at Concord (Concord) where he was placed in the administrative segregation unit.

Longval sought and obtained a determination in the Superior Court that the defendants had violated (1) his right to due process under the State and Federal Constitutions, (2) the State Civil Rights Act (G. L. c. 12, § 11H & § 11I [1986 ed.]), (3) the provision in G. L. c. 127, § 39 (1986 ed.), requiring the approval of the Commissioner of Correction (commissioner) of the transfer of an inmate to a segregated unit, and (4) certain regulations of the Department of Correction (department). We transferred the defendants' appeal to this court. We vacate the partial summary judgment entered in Longval's favor and agree with the judge's order denying the defendants' motion for summary judgment.[2]

Longval asserts that his legal rights were violated when, on two occasions, he was transferred to a segregated unit without a hearing and without the authorization of the commissioner. He sought a declaration that his rights were violated, injunctive relief, and damages under the State Civil Rights Act. He makes no claim of a violation of 42 U.S.C. § 1983 (1982).

We summarize the basic facts shown by affidavits and accompanying material and not disputed on the summary judgment record. On December 21, 1982, Longval, an inmate at Walpole, was found in possession of a large number of Valium tablets and received a disciplinary report for this major infraction. On December 31, 1982, a disciplinary board held a hearing on the disciplinary report. It found Longval guilty, imposed sanctions, and recommended that Longval be reviewed for classification to a higher custody status. On January 25, 1983, because of overcrowding, Longval was transferred to Concord where, on the determination of the deputy superintendent, he was placed in the administrative segregation unit (A.S.U.), which has a maximum security rating. The deputy superintendent reviewed Longval's status from time to time. On July 27, 1983, Longval was returned to Walpole in segregation status.

---

[2] The interlocutory order, allowing partial summary judgment in favor of Longval and denying the defendants' motion for summary judgment, is properly before this court for consideration in its entirety, because a single justice of the Appeals Court granted leave to appeal from that order. See *CUNA Mut. Ins. Soc'y* v. *Attorney Gen.*, 380 Mass. 539, 540 (1980).

On August 11, 1983, the departmental segregation unit board recommended that Longval be placed in the general population, and, after the commissioner approved that recommendation, Longval joined the general population on August 18.

On January 3, 1984, Longval received a disciplinary report for refusing a room change. No disciplinary hearing or status review was ever held on this charge. On January 5, 1984, because of overcrowding, he was transferred to Concord where again he was placed in the A.S.U. The deputy superintendent made periodic determinations that Longval should remain in administrative segregation. On March 7, 1984, Longval was returned to the general population at Walpole.

We consider first the defendants' argument that Longval was not entitled to partial summary judgment. We agree with that contention. We then consider and reject the defendants' claim that they were entitled to summary judgment.

1. The partial summary judgment for Longval must be vacated. The motion judge's ruling that Longval was denied his rights under the regulations of the department and under due process principles rests principally on her conclusion that Longval's placement in the A.S.U. in Concord was shown to be the substantial equivalent of his being placed in a departmental segregation unit (D.S.U.). The judge stated that the conditions in the A.S.U. in Concord and in the D.S.U. in Walpole were "virtually identical," reciting only two minor differences between conditions in the A.S.U. in Concord and in the D.S.U. in Walpole. On the assumption the judge made, we agree that Longval should have received determinations and hearings that he did not receive and that the judge's conclusion that Longval was denied statutory and regulatory rights would have been correct. See *Kenney* v. *Commissioner of Correction,* 393 Mass. 28, 34 (1984) (an inmate may be transferred to a D.S.U. only in compliance with departmental regulations).

The factual question whether the rights of inmates held in the A.S.U. in Concord and the rights of those held in the D.S.U. in Walpole were substantially the same was a material one. Certainly, the department and the commissioner may not sidestep statutory and regulatory provisions stating the rights

of an inmate as to his placement in a D.S.U. by assigning as a pretext another name to such a unit. See *Royce v. Commissioner of Correction,* 390 Mass. 425, 429-430 (1983). If, however, the rights of inmates held in the two units were significantly different, the department's regulations concerning departmental segregation units (103 Code Mass. Regs. § 421.00 [1978]), would not apply to the A.S.U. in Concord.[3] We have in the record guidelines established by the superintendent for the A.S.U. in Concord (103 CON § 421.00 [1982]), but we do not have in the record the specific guidelines for the operation of the D.S.U. in Walpole.[4]

Resolution of this factual question will determine whether G. L. c. 127, § 39 (1986 ed.), requiring the commissioner's authorization prior to the transfer of an inmate to any "segregated unit" in the Commonwealth, should be applied to the A.S.U. in Concord. The commissioner and others in the department appear to have interpreted G. L. c. 127, § 39, not to apply to administrative segregation, such as in the A.S.U. in Concord.

The record has an affidavit of the deputy superintendent at Concord during the relevant times stating that, although the conditions in "Administrative Segregation I" were "arguably more restrictive" than conditions in the general population, the conditions in the A.S.U. were not the same as conditions in a D.S.U. He stated that at the time only Walpole had a D.S.U. The affidavit sets forth examples of seemingly minor differences between the two units and suggests that there are additional differences. An affidavit from Longval provides facts that would warrant the conclusion that rights of inmates in the D.S.U. in Walpole and in the A.S.U. in Concord were substantially the same.

---

[3] By their terms, the regulations apply to "departmental segregation units" (103 Code Mass. Regs. § 421.01), which are areas designated by the commissioner (103 Code Mass. Regs. § 421.06[4]). The Concord A.S.U. was not so designated.

[4] Title 103 Code Mass. Regs. § 421.10 required the establishment of procedures for the operation of the departmental segregation unit in Walpole.

In order to prevail on that aspect of his motion for partial summary judgment concerned with violations of D.S.U.-related regulations and G. L. c. 127, § 39, Longval had to show that there was no dispute of material fact concerning the substantial similarity of two units. The clash between the affidavits on the question whether the A.S.U. at Concord was in practical effect a departmental segregation unit made impossible the proper allowance of summary judgment for Longval on this aspect of his claim. The partial summary judgment in favor of Longval was not warranted, therefore, on the theory relied on by the motion judge.

If the A.S.U. at Concord is not to be treated as a D.S.U. for the purposes of determining Longval's right to hearings and to determinations by the commissioner, the policies established for the A.S.U. at Concord state his rights. We have no basis on the record for concluding, as Longval argues, that the Concord A.S.U. guidelines were not lawfully adopted. We do not pause to consider whether it is to his advantage to make such an argument. The record shows that the deputy superintendent of Concord gave Longval the administrative "hearing" called for in the Concord guidelines and conducted subsequent administrative reviews.[5] There may have been no justification in a due process sense for retaining Longval in the A.S.U. at Concord for as long as he was held (see *Hewitt* v. *Helms*, 459 U.S. 460, 476 n.8 [1983]), but, if there were defects in that process (assuming the Concord A.S.U. not to be a D.S.U. in practical operation), those defects are not shown on the summary judgment record.

Longval argues that, even if the regulations concerning transfers to a D.S.U. do not apply to his transfers to the Concord A.S.U., and even if the guidelines for A.S.U. placement at

---

[5] This so-called hearing is merely a review of the circumstances precipitating the inmate's placement in the A.S.U., conducted within three days of the placement, and a written statement to the inmate of the results of the hearing. 103 CON § 421.12. The record does not support the defendants' claim that the deputy superintendent met personally with Longval each time before deciding to place him in the A.S.U., but the guidelines do not appear to require such a meeting. The guidelines also call for periodic subsequent adminsitrative reviews.

Concord were not violated, the defendants violated regulations concerning the transfer of an individual from one facility to another. He relies on 103 Code Mass. Regs. § 420.00 (1978), concerning the classification of inmates, arguing that an inmate may not be transferred to a higher custody status (103 Code Mass. Regs. § 420.13[2] [p]) or to a lower custody status (103 Code Mass. Regs. § 420.14[11] [1978]) without the approval of the commissioner. He argues further that, in such situations, an inmate is entitled to attend a meeting at which his transfer to a different custody status is considered (see 103 Code Mass. Regs. § 420.13[2] and § 420.14), and that a transfer from one maximum security facility (Walpole) to another (Concord) is defined as a transfer to a lower custody status (103 Code Mass. Regs. § 420.01[20], [21]). The judge considered 103 Code Mass. Regs. § 420.00 only on the basis that, in her view, Longval's transfer to the A.S.U. in Concord was a transfer to a higher custody status.

We are told by an uncontested affidavit that Longval was transferred to Concord each time because of overcrowding at Walpole. There is no indication in the summary judgment record that Longval's classification as an inmate was changed, or had to be changed, under 103 Code Mass. Regs. § 420.00 as part of the process of moving him to Concord or, once there, as part of the process of placing him in the A.S.U.

We have no basis for concluding that either the commissioner's discretion to transfer prisoners because of overcrowding (see *Nelson* v. *Commissioner of Correction*, 390 Mass. 379, 397 [1983]; G. L. c. 127, § 97 [1986 ed.]) or the ability to place a prisoner in an A.S.U. is restricted in any way by the classification procedures set forth in 103 Code Mass. Regs. § 420.00. The interrelationship, if any, between the classification regulations and the transfer of prisoners because of overcrowding needs to be explained on the record. The plaintiff, of course, is entitled to seek to show that his transfers were in fact made for a reason or reasons that required compliance with particular regulations concerning hearings and approvals and that those requirements were not met.

2. The defendants argue that the judge erred in denying their motion for summary judgment. They advance as a reason the affirmative defense of qualified immunity, claiming that their actions were taken within areas assigned to their discretion and were not contrary to principles of constitutional law clearly established at the time. See *Anderson* v. *Creighton*, 483 U.S. 635, 639 (1987); *Harlow* v. *Fitzgerald*, 457 U.S. 800, 818 (1982). They make no argument that their immunity extends beyond what would be available to a defendant in an action under 42 U.S.C. § 1983 (1982).

This issue cannot be resolved until it is determined what rights, if any, Longval was denied. If by clear statutory or regulatory direction Longval was entitled to hearings or determinations by the commissioner that he never received, no discretionary act would be involved in the denial of those rights. Such a violation of Longval's rights would "interfere" with his "enjoyment" of rights secured to him by the laws of the Commonwealth, within the meaning of those words in G. L. c. 12, §§ 11H and 11I. In any event, a determination that the defendants had the benefit of a qualified immunity would not bar a court from declaring that Longval's rights under State regulations and under the State Civil Rights Act had been violated or from granting injunctive relief. It would only preclude the recovery of damages against the defendants. The defendants were not entitled to summary judgment on their theory of qualified governmental immunity.

The defendants also contend that their motion for summary judgment should have been allowed because they did not interfere with any rights of Longval "by threats, intimidation or coercion" (G. L. c. 12, § 11H). Longval, however, did not seek relief only under the State Civil Rights Act (G. L. c. 12, §§ 11H and 11I). He also sought a declaration that his constitutional rights had been violated, that the defendants violated department regulations, and that the defendants could not transfer him to a higher custody status without due process of law. None of these determinations required proof that the defendants acted by means of threats, intimidation, or coercion. Thus, at most, the defendants could have been entitled to summary judg-

ment on the question of their liability for damages under the State Civil Rights Act.

It is premature to decide the defendants' claim that, as a matter of law, Longval's rights were not interfered with by threats, intimidation, or coercion. Before deciding the question, it will be important to know what the wrongs, if any, committed by any defendant may have been. The failure to hold a hearing and the failure to obtain approval of particular conditions imposed on Longval do not readily compare to the sort of threatening, intimidating, or coercive conduct that would be a violation of the State Civil Rights Act. See, chronologically, *Batchelder* v. *Allied Stores Int'l, Inc.*, 388 Mass. 83, 85 (1983) (threat of arrest or removal by security guard); *Bell* v. *Mazza*, 394 Mass. 176, 179-180 (1985) (physical threat and threat to do "anything," "at any cost" to keep plaintiffs from exercising their rights); *Redgrave* v. *Boston Symphony Orchestra, Inc.*, 399 Mass. 93, 95 (1987) (plurality opinion) (threat of disruptions, implicating physical safety and integrity of performance); *O'Connell* v. *Chasdi*, 400 Mass. 686, 687-688, 691 (1987) (sexual harassment, involving threat of loss of employment). See also *Bally* v. *Northeastern Univ.*, 403 Mass. 713, 719-720 (1989) (noting that all these cases "involved a physical confrontation accompanied by a threat of harm").

Not every violation of law is a violation of the State Civil Rights Act. A direct violation of a person's rights does not by itself involve threats, intimidation, or coercion and thus does not implicate the Act. *Pheasant Ridge Assocs. Ltd Partnership* v. *Burlington*, 399 Mass. 771, 781 (1987). Similarly, we see no coercion, within the meaning of the State Civil Rigths Act, simply from the use of force by prison officials, authorized to use force, in order to compel a prisoner to do something he would not willingly do, even if it turns out that the official had no lawful right to compel the prisoner to take that action.

Shackling and handcuffing Longval and taking him to Concord was not by itself coercive under the Civil Rights Act, as Longval claims. If the officials had some further purpose in treating Longval as they did, threats, intimidation, or coercion might be involved. Conduct, even unlawful conduct, however,

lacks these qualities when all it does is take someone's rights away directly. *Pheasant Ridge Assocs. Ltd. Partnership* v. *Burlington; supra.*

3. The partial summary judgment is vacated and the case is remanded for further proceedings.

*So ordered.*