**Manuel ANDUJAR, Plaintiff,**

v.

**CITY OF BOSTON and J.R. McCabe, Defendants.**

Civ. A. No. 90–11778–C.

United States District Court, D. Massachusetts.

March 25, 1991.

Nelson Gediman, Boston, Mass., for plaintiff.

Nancy Albano, Asst. Corp. Counsel, City of Boston Law Dept., Boston, Mass., for defendants.

## MEMORANDUM

CAFFREY, Senior District Judge.

Plaintiff, Manuel Andujar, is suing the City of Boston and an individual police officer, J.R. McCabe, for damages resulting from an arrest based on mistaken identity. Plaintiff's amended complaint contains five Counts based on violations of his fourth, fifth and fourteenth amendment rights under 42 U.S.C. § 1983 (1981) and 42 U.S.C. § 1988 (1981), and violations of Mass. Gen.L. ch. 12, § 11I (1986). The City of Boston has brought the current motion to dismiss Counts I and III under Fed.R. Civ.P. 12(b)(6). For the following reasons, this motion should be denied as to Count I and allowed as to Count III.

### I.

For purposes of this motion, the facts as stated in plaintiff's amended complaint are accepted as true. On April 21, 1989, at approximately 5:30 in the evening, plaintiff received a ticket from officer McCabe for unlawfully destroying a parking ticket and for driving with a suspended license. McCabe then arrested Andujar as being Alfredo Andujar, a different individual who

had an outstanding Suffolk Superior Court default warrant on a drug charge. Although the plaintiff protested that he was not Alfredo Andujar, the police held him in custody and brought him to the West Roxbury District Court.

From there, the police took plaintiff to Suffolk Superior Court. The police claimed, and represented to the District Attorney's Office, that they had done a fingerprint check, and that plaintiff's fingerprints matched those of Alfredo Andujar. Plaintiff alleges that as a result of these representations, he was held on high bail. Plaintiff's wife then retained counsel, who, on April 28, 1989, made an emergency motion for discovery to obtain booking photographs from 1986 when Alfredo Andujar was arrested. This motion was allowed and heard on May 1, 1989. As a result of this motion, on May 3, 1989, plaintiff's counsel brought the photographs back to Suffolk Superior Court, where the photograph of Alfredo Andujar made it clear that he was not the same person as plaintiff.

Consequently, plaintiff was released that same day on his own recognizance, and the case was continued to May 9, 1989. Plaintiff states that the case was continued due to the continued representations by the district attorney, based on the information provided by the police, that there was a fingerprint match. On May 9, however, when the Commonwealth failed to produce any evidence that the two people were one and the same, plaintiff obtained a discharge from Suffolk Superior Court which stated that he was not the Alfredo Andujar named in the outstanding warrant. This discharge was issued after plaintiff spent a total of approximately twelve days in jail. During this twelve-day period, according to plaintiff's amended complaint, the police made no effort to obtain photographic booking evidence or to do any fingerprint match-up.

On March 16, 1990, plaintiff was again stopped for a traffic violation, this time by the Registry Police. Although plaintiff had on his person a copy of the Superior Court discharge, he was again detained, and held for approximately four to five hours in jail. Plaintiff alleges various injuries resulting from the incidents described above. In addition to spending twelve days in jail, he incurred costs in the amount of $212 for having his car towed. He also states that he lost his job on May 13, 1989, due to absenteeism and to being arrested on drug charges. He also complains of back and wrist injuries resulting from being handcuffed and forced to sleep on an iron board when he was initially brought to the West Roxbury District Court.

## II.

The City of Boston has moved to dismiss for failure to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). In deciding the motion, this Court must accept the facts set forth in the plaintiff's amended complaint as true, and must draw all reasonable inferences in the plaintiff's favor. *Porter v. Nutter*, 913 F.2d 37, 38 (1st Cir.1990); *Correa–Martinez v. Arrillaga–Belendez*, 903 F.2d 49, 51 (1st Cir. 1990). Furthermore, the Court should not grant the motion unless it appears beyond a doubt that the plaintiff can prove no set of facts that would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957); *Correa–Martinez*, 903 F.2d at 52; *Dartmouth Review v. Dartmouth College*, 889 F.2d 13, 16 (1st Cir.1989); *Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 514 (1st Cir.1988). It has been noted that there is a built-in tension between the notice pleading policy embodied in Rule 8, and the desire to protect municipalities from unwarranted actions under section 1983. *See* E. Chemerinsky, *Federal Jurisdiction* 398–99 (1989); 6 Fed. Proc., L.Ed. § 11:260 (1989). Thus, a plaintiff cannot rely on mere conclusions, but must back up his or her allegations with enough facts to support the underlying elements of the section 1983 claim. *Hurney v. Carver*, 602 F.2d 993, 995 (1st Cir.1979). In light of this standard, this Court shall examine the plaintiff's claims against the City of Boston.

Section 1983 provides a private right of action for a deprivation, under

color of state law, of a federally protected right.[1] To state a claim, plaintiff must first allege that he has, in fact, been deprived of a right secured by the Constitution. *Baker v. McCollan*, 443 U.S. 137, 140, 99 S.Ct. 2689, 2692, 61 L.Ed.2d 433 (1979). It is unnecessary to dwell on this element, as plaintiff's allegation of an unlawful arrest and twelve-day imprisonment is certainly enough to state a claim for a deprivation of liberty without due process of law.[2]

■ Second, he must allege facts sufficient to support a claim of municipal liability. It is beyond question that a municipality cannot be held liable for the actions of its employees on the basis of a *respondeat superior* theory. *Monell v. Department of Social Servs.*, 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978). It is equally well-settled that to state an actionable claim under section 1983, a plaintiff must allege that the deprivation resulted from a custom or policy of the municipality. *Monell*, 436 U.S. at 690–91, 98 S.Ct. at 2035–36; *Santiago v. Fenton*, 891 F.2d 373, 381 (1st Cir.1989); *Bordanaro v. McLeod*, 871 F.2d 1151, 1155 (1st Cir.) (quoting *Monell*, 436 U.S. at 690–91, 98 S.Ct. at 2035–36), *cert. denied,* —— U.S. ——, 110 S.Ct. 75, 107 L.Ed.2d 42 (1989). Plaintiff bases his § 1983 claim on two policies. First, his amended complaint alleges "a policy or practice of failing to properly investigate the identification of individuals." To support such an allegation, plaintiff would have to prove three

elements at trial. First, he would have to show that there is a policy or custom of failing to investigate properly the identities of people detained. Second, he would have to be able to attribute that policy to the policymakers of the City of Boston by demonstrating that the practice was so widespread that the officials could be charged with constructive knowledge of it. *Bordanaro*, 871 F.2d at 1156. Third, plaintiff would have to prove that the custom was the cause of his injuries. *Id.*

■ Plaintiff's second theory for finding a municipal policy or custom is that the City has "a policy or practice of failing to train and/or supervise police officers properly in the appropriate execution of warrants, obtaining proper identification, and the appropriate procedures for seizing and detaining citizens." The Supreme Court has set forth stringent requirements for plaintiffs bringing claims based on a municipality's failure to train. *See Santiago v. Fenton*, 891 F.2d 373, 381 (1st Cir.1989); *see Canton v. Harris*, 489 U.S. 378, 392, 109 S.Ct. 1197, 1206, 103 L.Ed.2d 412 (1989). As discussed above, the plaintiff must show that there is indeed a custom or policy of failing to train, and that that policy caused his injuries. Additionally, the Supreme Court has held that "inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *Canton*, 489

---

**1.** Section 1983 states:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

42 U.S.C. § 1983 (1981).

**2.** The Supreme Court case of *Baker v. McCollan* should be mentioned at this point. 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979). In that case, the Supreme Court held that there was no deprivation of liberty without due pro-

cess of law where the plaintiff had been detained pursuant to a facially valid warrant. *Id.* at 145, 99 S.Ct. at 2695; *see also Gero v. Henault*, 740 F.2d 78, 85 (1st Cir.1984), *cert. denied*, 469 U.S. 1191, 105 S.Ct. 965, 83 L.Ed.2d 970 (1985). The Court in *Baker* opined, however, that detention for an extended period of time might constitute a constitutional deprivation. *Baker*, 443 U.S. at 145, 99 S.Ct. at 2695. Moreover, subsequent cases have distinguished *Baker* in instances where the arrest warrant was invalid. *McKay v. Hammock*, 730 F.2d 1367, 1371 (10th Cir.1984); *see Powe v. City of Chicago*, 664 F.2d 639, 649 (7th Cir.1981). For purposes of the current motion to dismiss, this line of cases poses no problem to plaintiff, as this Court does not have the arrest warrant before it, but rather, confines its inquiry simply to the allegations contained in the complaint.

U.S. at 388, 109 S.Ct. at 1204. In so holding, the Court reiterated its earlier statement in *Pembaur v. Cincinnati* that " '[M]unicipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives' by city policymakers." *Id.* at 389, 109 S.Ct. at 1205 (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 483–84, 106 S.Ct. 1292, 1299–1300, 89 L.Ed.2d 452 (1986)). The Court added, however, that the need for different training can be so obvious that the city's policymakers can be said to be "deliberately indifferent" to it. *Id.* 489 U.S. at 390, 109 S.Ct. at 1205.

■ Although plaintiff has a difficult burden ahead of him in succeeding on his claims against the City of Boston, especially on a theory of failure to train, it cannot be said that he has failed to allege a claim of municipal liability for purposes of a Rule 12(b)(6) motion. It is true, as defendant argues, that a single incident does not demonstrate the existence of a policy or custom. *Oklahoma City v. Tuttle*, 471 U.S. 808, 823–24, 105 S.Ct. 2427, 2436–37, 85 L.Ed.2d 791 (1985); *Bordanaro*, 871 F.2d at 1156–57. Here, however, plaintiff has not merely alleged a single incident, but has alleged in his amended complaint that he was arrested a second time by the Registry Police under the same warrant, and detained for approximately four and one-half hours.[3] Moreover, the First Circuit has stated that where the " 'single incident' in question involves the concerted action of a large contingent of individual municipal employees, the event itself provides some proof of the existence of the underlying policy or custom." *Id.* at 1157. Given that the police department detained the plaintiff for twelve days, and drawing all inferences in his favor, it is reasonable to infer that several individuals played a role in plaintiff's detention and misidentifi-

cation, and that it was not simply a "single incident." *See Kibbe v. Springfield*, 777 F.2d 801, 805 (1st Cir.1985) (where several officers and several shootings involved, not the "single incident" addressed by the Supreme Court), *cert. dismissed*, 480 U.S. 257, 107 S.Ct. 1114, 94 L.Ed.2d 293 (1987). Finally, the City's identification and arrest policies are implicated by the fact that the warrant on which plaintiff was arrested was three years old. It could be argued that special procedures are mandated when a person is arrested on a warrant that has been outstanding for that length of time. Clearly, the facts alleged in the plaintiff's amended complaint will not, without more, be sufficient at a later stage. For purposes of a motion to dismiss, however, plaintiff has sufficiently alleged the necessary elements of a § 1983 action.

### III.

■ Although the plaintiff has sufficiently alleged a claim against the City of Boston under § 1983, he has failed to state a claim under Mass.Gen.L. ch. 12, § 11I (1986). Section 11I provides a civil cause of action "[w]henever any person or persons, whether or not acting under color of law, interfere by threats, intimidation or coercion ... with the exercise or enjoyment ... of rights secured by the constitution or laws of the United States or of rights secured by the constitution or laws of the commonwealth...." Not every violation of the law is also a violation of the State Civil Rights Act. *Longval v. Commissioner of Correction*, 404 Mass. 325, 333, 535 N.E.2d 588, 593 (1989). Consequently, stating a claim under § 1983 does not automatically mean that plaintiff has also stated a claim under § 11I. *See, e.g., Celia v. City of Brockton*, No. 86–3325, 1990 WL 26865 (D.Mass.1990) (Westlaw, Allfeds library) (denying summary judgment on § 1983 claim, but granting it as to claim under § 11I); *Hathaway v. Stone*, 687 F.Supp.

---

**3.** The defendant states in its memorandum in support of the motion to dismiss that "[c]ertainly, the City cannot be charged with Plaintiff's arrest on March 16, 1990 because that arrest was conducted by the Registry Police." For purposes of a motion to dismiss, we look only to the fact that the plaintiff has alleged two sepa-

rate incidents to show that there was a policy or custom of the City. The extent to which the Registry Police should be regarded as a separate actor is unclear. *See Trezevant v. Tampa*, 741 F.2d 336, 340 (11th Cir.1984). The relationship between the City and the Registry Police is an issue of fact to be addressed at a later time.

708, 711 (D.Mass.1988) (stating that plaintiff failed to state a claim under § 11I even if he had stated a claim under § 1983). Significantly, the Supreme Judicial Court has stated:

> we see no coercion, within the meaning of the State Civil Rigths [sic] Act, simply from the use of force by prison officials, authorized to use force, in order to compel a prisoner to do something he would not willingly do, even if it turns out that the official had no lawful right to compel the prisoner to take that action. Shackling and handcuffing [plaintiff] ... was not by itself coercive under the Civil Rights Act, as [plaintiff] claims. If the officials had some further purpose in treating [plaintiff] as they did, threats, intimidation, or coercion might be involved. Conduct, even unlawful conduct, however, lacks these qualities when all it does is take someone's rights away directly.

*Longval,* 404 Mass. at 333–34, 535 N.E.2d at 593 (dictum). Likewise, the Supreme Judicial Court has indicated that § 11I is primarily aimed at intentional conduct. *Deas v. Dempsey,* 403 Mass. 468, 471, 530 N.E.2d 1239, 1241 (1988).[4] Consequently, this Court has previously stated that a City's failure to train does not involve "threats, intimidation, or coercion" for purposes of § 11I. *Hathaway,* 687 F.Supp. at 711. In light of these principles, plaintiff has failed to allege "threats, intimidation or coercion" sufficient to state a claim under Mass.Gen.L. ch. 11I, and that Count should be dismissed.

Thus, for all of the reasons stated above, the City of Boston's motion to dismiss should be denied as to Count One of the amended complaint, and allowed as to Count Three.

Order accordingly.

---

**4.** The court did not rule out completely the possibility that "coercion" could arise out of

negligence under special circumstances. *Id.*