Dwayne JOHNSON, et al.

v.

Lawrence CELESTER, et al.

Civil Action No. 12–11344–RWZ.

United States District Court, D. Massachusetts.

Signed May 22, 2015.

Charles S. Pappas, South Natick, MA, for Dwayne Johnson, et al.

Shane P. Early, Nicole M. O'Connor, City of Boston Law Department, Boston, MA, for Lawrence Celester, et al.

*MEMORANDUM OF DECISION*

ZOBEL, District Judge.

Plaintiffs, Dwayne Johnson ("Johnson"), Regina White ("Regina"), Makia White ("Makia"), and Dwayne Johnson, Jr. ("Junior") (collectively the "Plaintiffs") bring this action under 42 U.S.C. § 1983, the Massachusetts Civil Rights Act (Mass. Gen. Laws ch. 12 §§ 11H and 11I) ("MCRA"), and the common law, alleging two Boston police officers, Lawrence Celester ("Celester") and Lynwood Jenkins ("Jenkins"), violated their constitutional rights by using excessive force during the course of their arrests on July 24, 2009.

They also bring a claim under 42 U.S.C. § 1983 against the City of Boston (the "City"), alleging a policy or custom of failing to properly train or supervise its officers regarding the use of force, with deliberate indifference to the constitutional rights of citizens.

Before me now are Celester's motion for summary judgment only as to the MCRA claim, the City's motion for summary judgment, and the defendants' joint motion for bifurcation of the trial.

**I.   Facts**

I restate those undisputed facts from the summary judgment record that are relevant to the analysis that follows, drawing all inferences in the nonmoving parties' favor.

**A.   The Events of July 24, 2009**

Makia was approached by Celester and Jenkins while she was sitting on the stoop in front of 26 Joe L. Smith Way with her brother, Dwayne Johnson Jr., on July 24, 2009. Compl., ¶ 12. Celester asked Makia if she lived in the building and she said no. *See* Deposition of Makia White, Docket # 58-1, 46:23–24, 47:1–2, 17–21. Celester ran Dwayne Johnson Jr.'s name in a police database and determined that he had an outstanding warrant. *Id.* at 54:15–24. Makia told Celester that her brother did not have a warrant and that he had never been in trouble. *Id.* at 55:6–10. Celester told Makia to "mind [her] business" and called her a "bitch." *Id.* at 60:11–24. In response, Makia called Celester a "dickhead," told him she was going to call her mother, and walked away towards a set of stairs. *Id.* at 60:1–24. Makia proceeded up the stairs to a Burger King parking lot to call her mother. *Id.* at 62:1–15, 63:1–13. Celester followed Makia up the stairs. Exhibit 1, 62:24; 63:1–2. Without warning, Celester grabbed Makia's left arm,

causing her to drop her phone. *See* Plaintiffs' Opposition to Celester's Motion for Summary Judgment, Docket # 63, at 5; Docket # 58–1 at 62:24, 63:1–2, 64:3–17. Celester then "slammed [her] to the pavement . . . and began grabbing at her and physically assaulting [her]." Compl. ¶ 20.

Regina arrived after receiving Makia's phone call. *See* Deposition of Regina White, Docket # 58–2, 28:3–8. When she arrived on scene Regina observed that one of Makia's hands was in handcuffs. *Id.* at 33:6–10. Makia was not allowing Celester to cuff her other hand, moving it constantly and telling Celester to get off of her. *Id.* at 34:14–24, 35:1–10. A struggle ensued between Makia and Celester because Makia did not want to be handcuffed. *Id.* at 34:14–24, 35:1–5. Celester struggled with Makia for approximately ten minutes before he was able to get her other hand cuffed. *Id.* at 37:10–12. During that ten minute period while Makia was resisting arrest, Regina was asking Celester what was going on and why her daughter was being arrested. *Id.* at 39:16–24, 40:1–3. Celester did not respond to Regina's questions. *Id.* After Makia's other hand was cuffed, Celester "picked [her] up by her hair and the handcuffs." *Id.* at 55:19–24, 56:1. Regina then inserted herself into the situation by grabbing Makia's hair. *Id.* at 60:4–9. Regina knew that she would be arrested if she touched Celester, so she opted to pull on Makia instead. *Id.* at 56:12–21, 57:1–6.

Regina returned to her house after Makia was placed in the cruiser for transport. *Id.* at 74:7–24; 75:1–15. She remained there for two to three minutes before someone knocked on her door and told her that her husband, Dwayne Johnson, was also being arrested. *Id.* at 75:12–18. Regina then left her house and began walking towards one of the police cruisers. *Id.* at 75:18–22. While she was walking, Celester directed Regina not to approach the cruis-

ers. *Id.* at 75:23–24; 76:1–2. Regina then inquired repeatedly why Dwayne Johnson was being arrested. *Id.* at 76:1–14. Celester did not answer, instead threatening to "lock [her] up too" if she didn't go back in the house. *Id.* at 76:9–17. Regina then asked Officer Celester his name, which he provided. *Id.* at 76:9–21. Before returning to her house she told him he would be hearing from her. *Id.*

## B. Celester's Disciplinary Record

In his seventeen years on the force, Celester accrued at least 11 citizen complaints. Of those, only four, Citizen Complaints # 14298, # 12503, # 27803, and # 9404, contained allegations of unnecessary physical force, and only three arose from his activities as a police officer. *See* Docket # 56, ¶ 15.

Citizen Complaint # 14298 concerns an incident that took place on September 2, 1998. *Id.* at ¶ 25. It grew out of a domestic dispute between Celester and his ex-girlfriend, who claimed that he pushed her during an off-duty argument about his failure to return one of her pager messages. *Id.* As a result, Celester was charged with "respectful treatment" (Rule 102 § 9). After an internal investigation, the investigator found that the conduct alleged did occur, but that Celester's conduct was reasonable under the circumstances. *Id.* at ¶ 27. He was exonerated on the respectful treatment charge.

Citizen Complaint # 12503 concerns an incident that took place on June 3, 2003. As a result of Citizen Complaint # 12503, Celester was charged with two internal charges: "use of non-lethal force" (Rule 304 § 2) and "respectful treatment" (Rule 102 § 9). *Id.* at ¶ 17. The City launched an investigation, interviewed multiple witnesses, and concluded that, based on the evidence, the complaint was unfounded. *Id.* at ¶ 18.

Citizen Complaint # 27803 concerned an incident that occurred on December 20, 2003. *Id.* at ¶ 22. In response to Citizen Complaint # 27803, Celester was internally charged with conduct unbecoming a police officer (Rule 102 § 3) and "conformance to laws" (Rule 102 § 35). *Id.* at ¶ 23. The investigator determined that Celester had used unreasonable judgment when he engaged the complainant without summoning assistance and without proper equipment. Based on those findings he downgraded the charge to "neglect of duty" (Rule 102 § 4), which was sustained. *Id.* at ¶ 24. Celester was reprimanded. *Id.*

Citizen Complaint # 9404 concerned an incident that took place on May 17, 2004. *Id.* at ¶ 19. Celester was charged with one claim of "use of force" (Rule 304 § 2). *Id.* at ¶ 20. The City launched an investigation in response, and interviewed Celester, two witnesses, and the complainant. The investigator determined that the conduct alleged did occur, but that Celester's use of force was reasonable under the circumstances and he was exonerated of the use of force charge. *Id.* at ¶ 21.

In the late 1990s, the City unilaterally initiated multiple internal investigations as a result of off-duty incidents between Celester and his ex-girlfriend. Celester was put on restricted firearm status and reassigned during the pendency of the investigation into the most serious charges. *See id.* at ¶¶ 28–36. Only one such investigation led to a sustained violation. *Id.* at ¶ 31.

## II. Standard of Review

### A. Summary Judgment

Summary judgment is appropriate when the moving party shows that there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In considering whether or not a genuine issue of material fact exists, the court "must view the evidence in the light most favorable to the opposing party." *Tolan v. Cotton,* ——— U.S. ———, 134 S.Ct. 1861, 1866, 188 L.Ed.2d 895 (2014). The nonmovant, however, "must point to competent evidence and specific facts to stave off summary judgment." *Tropigas de Puerto Rico, Inc. v. Certain Underwriters at Lloyd's of London,* 637 F.3d 53, 56 (1st Cir.2011); *see Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

■ "[I]t is pointless to submit ... [a] probable cause question[ ] to the jury at all unless the facts are disputed." *Acosta v. Ames Dep't Stores, Inc.,* 386 F.3d 5, 8 (1st Cir.2004). "When the relevant facts leading to the officer's involvement are established, probable cause is a 'mixed question of law and fact' suitable for determination by the court." *Id.* at 8–9 (citing *Ornelas v. United States,* 517 U.S. 690, 696, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996)). "In the case at hand, the material facts—what the police knew at the moment of the arrest, the source of their knowledge, and the leads that they pursued or eschewed—are not in dispute. When that is so, the existence *vel non* of probable cause ordinarily is amenable to summary judgment." *Id.* at 9 (citing *Roche v. John Hancock Mut. Life Ins. Co.,* 81 F.3d 249, 254–56 (1st Cir.1996)).

### B. Bifurcation

The court may order a separate trial of any claim(s) or issue(s) "in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy." Fed.R.Civ.P. 42(b).

## III. Discussion

### A. Celester's Motion for Partial Summary Judgment as to Count III of the Amended Complaint

■ Celester moves for summary judgment solely on Count III, which alleg-

es a violation of the MCRA. This claim requires a showing by the plaintiff that her exercise or enjoyment of rights secured by the constitution or laws of either the United States or Massachusetts have been interfered with, or attempted to be interfered with, by threats, intimidation, or coercion. Mass. Gen. Laws ch. 12, § 11H and 11I. "On its face, the MCRA contemplates a two-part sequence: (1) the defendant threatens, intimidates, or coerces the plaintiff, in order to (2) cause the plaintiff to give up something that the plaintiff has the constitutional right to do." *Goddard v. Kelley,* 629 F.Supp.2d 115, 128 (D.Mass. 2009). The requirement of threats or coercion is an "important difference" from the federal civil rights statute, 42 U.S.C. § 1983. *See Santiago v. Keyes,* 890 F.Supp.2d 149, 154 (D.Mass.2012). A direct violation of constitutional rights is not alone sufficient to allege an MCRA claim. "A direct violation of a person's rights does not by itself involve threats, intimidation, or coercion and thus does not implicate the [MCRA]." *Longval v. Comm'r of Correction,* 404 Mass. 325, 333, 535 N.E.2d 588 (1989). "Conduct, even unlawful conduct, . . . lacks [the relevant coercive qualities] when all it does is take someone's rights away directly." *Id.* at 333–334, 535 N.E.2d 588; *see also Swanset Dev. Corp. v. City of Taunton,* 423 Mass. 390, 396, 668 N.E.2d 333 (1996) ("[A] direct deprivation of rights, even if unlawful, is not coercive because it is not an attempt to force someone to do something the person is not lawfully required to do.").

#### i. Makia White

■ On the record before me, a reasonable jury could find that Celester's following plaintiff into the parking lot was coercive, threatening, or intimidating, and that Celester's alleged assault on Makia violated her Fourth Amendment rights.

#### ii. Regina White

■ Regina White, however, has failed to demonstrate *either* threats *or* a constitutional violation. She was not arrested at the time of these events, and no force was used against her. A threat to use lawful means, including a threat to arrest on the basis of probable cause, is not actionable under the MCRA. *Damon v. Hukowicz,* 964 F.Supp.2d 120, 150 (D.Mass.2013) (citing *Sena v. Commonwealth,* 417 Mass. 250, 263, 629 N.E.2d 986 (1994)).

■ Whatever her intentions in coming to the aid of her daughter as Makia was resisting arrest, it is irrelevant to the probable cause inquiry. "Probable cause to arrest exists if, at the moment of the arrest, the facts and circumstances within the relevant actors' knowledge and of which they had reasonably reliable information were adequate to warrant a prudent person in believing that the object of his suspicions had perpetrated or was poised to perpetrate an offense." *Roche v. John Hancock Mut. Life Ins. Co.,* 81 F.3d 249, 254 (1st Cir.1996). It is not disputed that Regina directly approached Celester as he was attempting to arrest Makia and repeatedly asked him why Makia was being arrested. It is also undisputed that Regina grabbed on to her daughter, Makia, while Makia was resisting arrest. Regardless of her intent, that is sufficient to lead a prudent person to the reasonable conclusion she was attempting to assist Makia in resisting arrest, i.e., escaping from police custody. Because Celester would have had authority to arrest Regina at that time, his threat of lawful action (i.e., threat of arrest) cannot be a predicate for an MCRA claim.

■ Moreover, it remains opaque to me what, precisely, constituted a violation of Regina's constitutional rights. Regina was not touched or arrested. She maintains she had "a right to remain outside her

home at the time in question as she was on public property," and she traces that right "upon the basic premise of the constitution and liberty." Docket # 63, at 7. Curiously, entirely absent from plaintiffs' argument on this point was any citation to the United States or Massachusetts constitutions. Instead, she relies upon Black's Law Dictionary's definition of the word "liberty" and two centenarian Supreme Court decisions neither of which stands for any related proposition, and the continued validity of which is highly suspect. *See Booth v. People of State of Illinois*, 184 U.S. 425, 428, 22 S.Ct. 425, 46 L.Ed. 623 (1902) (upholding regulation barring commodities option contracts as not violative of Fourteenth Amendment "liberty"); *Munn v. People of State of Illinois*, 94 U.S. 113, 142, 24 L.Ed. 77 (1876) (upholding grain storage regulation as not violative of the, then relatively recent, Fourteenth Amendment to the United States constitution). Regina white has failed to adequately allege what, if any, constitutional rights of hers were violated.

Celester's motion for partial summary judgment (Docket # 57) is ALLOWED IN PART as to Regina White and DENIED IN PART as to Makia White.

Moreover, because Regina White has failed to allege a constitutional violation, her claims under 42 U.S.C. § 1983 are DISMISSED *sua sponte.*

**B. The City's Motion for Summary Judgment**

A city may be liable under 42 U.S.C. § 1983 only if there was an underlying constitutional deprivation, and that deprivation resulted from a municipal custom or policy. *Estate of Bennett v. Wainwright*, 548 F.3d 155, 177 (1st Cir.2008). Both prongs must be satisfied in order to succeed on a section 1983 action against a municipality.

"The second prong of the municipality test under section 1983 requires three elements: (1) the alleged municipal action at issue must constitute a 'policy or custom' attributable to the City; (2) the municipal policy or custom [must have actually] caused plaintiff's injury; and (3) the municipality possessed the requisite level of fault, ... 'deliberate indifference.'" *Trinidad v. City of Boston*, No. CIV.A 07–11679–DPW, 2010 WL 2817186, at *11 (D.Mass. July 16, 2010) amended, No. CIV.A. 07–11679–DPW, 2011 WL 915338 (D.Mass. Mar. 15, 2011) (quoting *Young v. City of Providence ex rel. Napolitano*, 404 F.3d 4, 26 (1st Cir.2005)).

Evidence of citizen complaints against an officer, without more, does not suffice to show a municipal custom of permitting or encouraging excessive force. *Trinidad v. City of Boston*, 2010 WL 2817186, at *11 (D.Mass. July 16, 2010). A plaintiff must, at the very least, produce evidence that serious prior incidents similar to the alleged constitutional violation in question put the municipality on inquiry notice of an officer's danger to the public and that the police department's policy of ignoring or covering up those incidents was "the moving force" behind the alleged violation. *Young*, 404 F.3d 4, 25–28.

In *Trinidad*, the plaintiff failed to produce any evidence of the City's failure to supervise and discipline its officers and investigate incidents related to the misconduct of its officers other than the allegations involving the specific officer implicated in the complaint. Because the plaintiff had failed to show that the alleged failure to supervise, investigate, and discipline "was so widespread or so well-settled as to be a custom or practice," the court granted summary judgment for the city. *Trinidad*, 2010 WL 2817186, at *11. Like in *Trinidad*, the plaintiffs here have produced no evidence of a failure by the de-

partment to investigate or discipline Celester for alleged misconduct. Though he has a long history of citizen complaints filed against him, all were followed by a formal investigation with interviews of the complainant, Celester, and third party witnesses. All but two of the investigations terminated either in a determination that the complaint was unsubstantiated or with Celester's exoneration. The majority involved domestic violence allegations by Celester's ex-girlfriend while he was off-duty, many in situations where she was the aggressor. And only one investigation involved allegations of excessive force during an arrest, and on that occasion the investigation exonerated Celester. He was disciplined on occasions when he was found in violation, and he was temporarily reassigned during the pendency of the most serious investigations.

While Celester's internal affairs history is not perfect, none of it bears a particularly close similarity to the allegations in the complaint here. And in the case of each prior complaint, the record reflects a thorough investigation by the department. The plaintiffs have produced no evidence of a pattern or practice of failing to properly investigate prior allegations of misconduct by police officers in general, let alone Officer Celester specifically. Plaintiffs have produced no evidence that the City's alleged failure to properly discipline Celester caused the alleged harms. And the substantial investigation after each allegation of misconduct, both on and off duty, belies any allegation of the City's deliberate indifference to the constitutional rights of citizens. *Trinidad,* 2010 WL 2817186, at *11.

The City's motion for summary judgment (Docket # 52) is ALLOWED.

## C. Bifurcation

The defendants' joint motion for bifurcation (Docket # 46) is DENIED AS MOOT.

## IV. Conclusion

Celester's motion for partial summary judgment (Docket # 57) is ALLOWED IN PART and DENIED IN PART.

Regina White's claim under 42 U.S.C. § 1983 is DISMISSED.

The City's motion for summary judgment (Docket # 52) is ALLOWED.

The defendants' joint motion to bifurcate (Docket # 46) is DENIED AS MOOT.